833 F.2d 38
 9 Fed.R.Serv.3d 436
 Charles R. DEASY, Personal Representative of the Estate of
Ginger Deasy, Deceased, Plaintiff-Appellant,
v.
Elizabeth H. HILL, Defendant-Appellee.
Charles R. DEASY, Personal Representative of the Estate of
Ginger Deasy, Deceased, Plaintiff-Appellee,
v.
Elizabeth H. HILL, Defendant-Appellant.
 Nos. 86-2648(L), 86-2662.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 30, 1987.
Decided Nov. 9, 1987.
 
 Robert J. Stanford, Washington, D.C., for plaintiff-appellant.
 Jacqueline Kathleen O'Shea Poux (R. Harrison Pledger, Jr., McLean, Va., on brief), for defendant-appellee.
 Before PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Charles Deasy and his wife Ginger brought a malpractice action against Dr. Elizabeth Hill, alleging that the latter's negligence diminished Ginger's chances of surviving cancer of the cervix. They alleged that Hill had failed to notify Ginger of the abnormal results of a pap smear or of the need for reexamination. After Ginger died and immediately before trial, Charles Deasy moved to amend his complaint to add a claim that Hill had performed the pap smear negligently. The district court refused to allow the amendment, and the case proceeded to trial solely on the issue of Hill's alleged failures of notification. The jury returned a verdict for Hill, and Charles Deasy appeals the district court's refusal to allow amendment of the complaint.
 
 
 2
 We affirm.I.
 
 
 3
 On January 13, 1984, complaining of weight loss and abdominal pain, Ginger Deasy saw the defendant at her office in Falls Church, Virginia. Hill performed a physical examination on Deasy, which included a Papanicolau ("pap") smear, a procedure commonly used to detect cancer of the uterus and cervix. Hill submitted the pap smear to a pathology laboratory for examination and analysis.
 
 
 4
 Several days later, the laboratory forwarded to Hill the results of its examination, which indicated the presence of atypical cells. The laboratory recommended that Deasy be reexamined. Hill claims that she informed Deasy of the test results and the need to repeat the test. Charles Deasy contends that Hill failed to notify his wife of either the test results or the need for a reexamination.
 
 
 5
 In the year following her visit to Hill's office, Deasy and her husband moved to Annapolis, Maryland. When, in early 1985, Deasy began to experience abnormal vaginal bleeding, she saw physicians in the Annapolis area, who examined her and discovered cancer of the cervix.
 
 
 6
 Ginger Deasy filed suit in January, 1986, claiming malpractice in Hill's failure to notify her of the pap smear results and the need for reexamination. That suit was dismissed without prejudice by the district court because Deasy had failed to comply with Virginia's Medical Malpractice Act, which forbids the bringing of a malpractice action against a health care provider before the provider is given notice of the impending claim and an opportunity to seek review by a medical malpractice review panel. Va. Code Sec. 8.01-581.2 (1987 Cum.Supp.). Deasy refiled her suit in April, 1986. Defendant moved for summary judgment, claiming that suit was barred by the statute of limitations, but that motion was denied.[1]
 
 
 7
 Ginger Deasy died before the suit came to trial. Her husband Charles moved immediately before the trial to amend the complaint to convert the personal injury action into a wrongful death action, and to substitute himself, as personal representative of Ginger Deasy's estate, as plaintiff in the case. The amended complaint also sought to add to the allegation that Hill had failed to inform Ginger of the pap smear results a claim that Hill had performed the pap smear negligently. Plaintiff asserted that the amended complaint added no new claim, because defendant had been made aware of the negligent performance claim through discovery. Defendant responded that the negligent performance claim was new, and should not be allowed.
 
 
 8
 The district court refused to allow the addition of the negligent performance claim. The case proceeded to trial solely on the issue of defendant's failure to notify Deasy of the pap smear results, and the jury rendered a verdict in defendant's favor.
 
 II.
 
 9
 Rule 15(a) of the Federal Rules of Civil Procedure allows amendment of pleadings by leave of the court. While this rule states that "leave shall be freely given when justice so requires," Fed.R.Civ.P. 15(a) (1987), leave to amend is not to be granted automatically. Disposition of a motion to amend is within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Gladhill v. General Motors Corp., 743 F.2d 1049 (4th Cir.1984). A motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant. Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.1980); Woodson v. Fulton, 614 F.2d 940, 943 (4th Cir.1980). Undue delay and prejudice are both present in this case.
 
 
 10
 The original complaint alleged malpractice in Hill's failure to inform Deasy of the results of the pap smear and in her failure to reexamine Deasy. The complaint made no mention of Hill's allegedly negligent performance of the pap smear itself. In July, 1986, plaintiff filed two expert witness statements pursuant to Fed.R.Civ.P. 26(b)(4)(A), both of which stated that defendant had been negligent in her performance of the pap smear. Yet, despite his awareness of this alleged negligence, plaintiff did not act to amend his complaint until nearly three months later, just before trial, in October, 1986.
 
 
 11
 In the circumstances of this case, plaintiff's delay was undue. Plaintiff failed to offer to the trial court, and does not offer here, any reason for his delay. In fact, plaintiff's argument, that defendant was not surprised by the new claim because she had been made aware of it through the expert witness statements, shows the absence of any such reason. The burden rests primarily upon the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim.
 
 
 12
 Moreover, "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule." 6 Wright & Miller, Federal Practice and Procedure Sec. 1488 (1971). Amendments near the time of trial may be particularly disruptive, and may therefore be subject to special scrutiny. See First National Bank of Louisville v. Master Auto Service Corp., 693 F.2d 308, 314 (4th Cir.1982) (motion to amend properly denied when made nineteen days before trial and where amendment was not the result of movant's discovery of new facts); Woodson, 614 F.2d at 942-43 (denial of leave to amend upheld where plaintiff, who had been aware for some time of the new claim, moved to amend immediately prior to trial). Here the delay was significant, and the motion to amend came right before trial and after discovery was complete. In these circumstances, the district judge was entitled to regard the delay as unwarranted.
 
 
 13
 Delay alone, without prejudice, does not support the denial of a motion for leave to amend. Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1044 (4th Cir.1984); Davis, 615 F.2d at 613. Plaintiff asserts that there would be no prejudice in this case. He contends that Hill was adequately prepared to litigate the new claim because plaintiff's expert witness statement alerted her to the claim, and led her to depose plaintiff's experts on the issue of negligent performance of the pap smear.
 
 
 14
 We do not believe, however, that Hill had the opportunity to which she was entitled for discovery on the issue. A complaint is meant to state the issues of a case so that the parties can conduct discovery and present their cases intelligently. Hinting at a claim in an expert witness statement leaves the opposing party guessing at one's real intentions. The original complaint led defendant to believe that plaintiff did not claim negligent performance, and defendant could quite sensibly have decided not to commit her resources to a shadowy claim that plaintiff may or may not have been serious about raising. Defendant may have deposed plaintiff's experts on the issue; that was a natural precaution since the issue was raised in their statements. But defendant did not make any affirmative effort to disprove negligent performance. She did not, for example, hire her own experts to testify that her performance of the pap smear was not negligent, and it is doubtful that she would have had time to do so before trial. It would be manifestly unfair to require defendant to go to trial without a fair opportunity to prepare her case or to take anything more than the most minimal precautionary measures.
 
 
 15
 Even had trial been continued upon allowance of the amendment, defendant would nonetheless have been prejudiced. The original complaint alleged negligence only in Hill's failure to inform Ginger Deasy of the pap smear results or of the need for reexamination. Thus cast, the complaint raised a purely factual question, the resolution of which required no medical expertise. In seeking to add the allegation that Hill had failed to meet the applicable standard of care in performing the pap smear, the plaintiff sought to raise an issue of medical competence and to alter substantially the nature of the lawsuit. The proof required to defend against this new claim would be of an entirely different character than the proof which the defendant had been led to believe would be necessary. Belated claims which change the character of litigation are not favored. See Isaac v. Harvard University, 769 F.2d 817, 829 (1st Cir.1985) (no abuse of discretion where district court denied amendment which would "very materially change the nature of the complaint"); Mercantile Trust Co. v. Inland Marine Products Corp., 542 F.2d 1010, 1013 (8th Cir.1976) (no abuse of discretion where district court refused to allow late amendment which would add new theories of defense and which "would necessarily reopen much of the discovery").
 
 
 16
 With respect to the new claim, the defendant may well have been entitled under Virginia law to a review of the negligent performance claim by a medical malpractice review panel.[2] See Va. Code Sec. 8.01-581.1 et seq. (1984 & 1987 Cum.Supp.). The panel would consist of impartial attorneys and health care providers, and would be chaired by a state court judge. Va. Code Sec. 8.01-581.3. It would receive evidence and could conduct a hearing into whether the defendant had met the applicable standard of care, Va. Code Sec. 8.01-581.4, after which it would issue a written opinion. Va. Code Sec. 8.01-581.7. The opinion would be admissible as evidence at trial, and either party could call panel members to testify at trial. Va. Code Sec. 8.01-581.8.
 
 
 17
 Since this system was implemented in 1976, the median time for conclusion of a review, from the initial request to issuance of a panel opinion, has been slightly over eight months. Daughtrey & Smith, Medical Malpractice Review Panels in Operation in Virginia, 19 U.Rich.L.Rev. 273, 287-88 (1985). An additional eight months would nearly have doubled the time between plaintiff's filing of the original complaint in this action and the trial. While plaintiff is not responsible for the length of time the malpractice review might take, the burden to defendant would have been greatly reduced had plaintiff moved to amend when the negligent performance claim first became apparent, when discovery was still in progress and before the parties were ready to go to trial.
 
 
 18
 The Federal Rules are designed to function as "a means to the proper presentation of a case; ... they are to assist, not deter, the disposition of litigation on the merits." 3 Moore's Federal Practice Sec. 15.02 (1985). While the notice pleading contemplated by the Federal Rules deemphasizes technical nicety, trial courts retain the power to ensure that pleadings perform their proper function of framing the issues and facilitating the fair conduct of litigation. It would not be desirable to have discovery statements serve as amendments to the pleadings. Parties should not be encouraged to plead in this tentative and whimsical fashion, advancing their own cases while keeping their opponents off balance. Had plaintiff sought leave to amend at the time he filed his expert witness statements, the choice faced by the trial judge would have been a different one. On these facts, however, we are not disposed to overturn the exercise of the district court's discretion.
 
 III.
 
 19
 Finally, plaintiff urges that the trial court erred in instructing the jury on contributory negligence. After her initial consultation with defendant, Ginger Deasy consulted with Dr. James Cooper for treatment of ulcers. She was hospitalized under Dr. Cooper's care in February and March, 1984. Cooper testified that he was unaware of Deasy's earlier pap smear, but that he advised Deasy, upon her discharge from the hospital, to return to defendant. Hill also introduced a notation in Deasy's medical record and a statement from a hospital nurse, both stating that Deasy was advised upon her discharge from the hospital in March, 1984 to return to Hill.
 
 
 20
 Plaintiff now contends that the trial court erred in instructing the jury that Deasy could be found contributorily negligent, and her recovery barred, if she failed to exercise ordinary care in following the orders of her doctors, including the orders of Dr. Cooper, to return to defendant. Plaintiff claims that this instruction was erroneous because Dr. Cooper, not knowing of the results of the pap smear, had given Deasy no compelling reason to return to the defendant.
 
 
 21
 We need not address this contention, because the trial court's instruction clearly confined the issue of contributory negligence to the question whether Deasy failed to exercise ordinary care by not returning to defendant after being informed of the abnormal pap smear results. The court stated:
 
 
 22
 [I]t was the duty of the decedent, Ginger Deasy, to exercise ordinary care to follow the orders or directions given to her by the physicians, or her physician, with regard to returning for reexamination or further tests or follow-up on the first abnormal Pap test. If you believe from a preponderance of the evidence that the defendant notified the decedent to come in or return or make arrangements for such reexamination or further tests or follow-ups, and the decedent failed to do so, then the decedent was contributorily negligent.
 
 
 23
 Any confusion introduced by the trial judge's use of the word "physicians" was clarified by the remainder of the instruction, which referred solely to the defendant, Hill.
 
 
 24
 For the foregoing reasons, the judgment of the district court is
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Defendant appeals the district court's denial of her motion for summary judgment. In view of our decision in favor of the defendant, however, we need not reach the state law issues presented by defendant's cross-appeal
 
 
 [2]
 We assume, without deciding, that defendant would have been entitled to such review. Defendant asserts that a request for such review would not be timely, and would therefore be foreclosed, under state law. Should defendant's view of Virginia law prove correct, and had review been unavailable, the prejudice to defendant of allowing the amendment would obviously be great. Because we find sufficient prejudice to the defendant to support the district court's ruling even if review had been available to defendant, we do not find it necessary to decide this question of Virginia law