**SYNDICATED PUBLICATIONS, INC., Plaintiff,**

v.

**MONTGOMERY COUNTY, MARYLAND, Defendant.**

Civil A. No. AW 95–3769.

United States District Court, D. Maryland, Southern Division.

April 9, 1996.

C. Christopher Brown, Baltimore, MD, for plaintiff.

Clifford L. Royalty, Linda Berk Thall, Rockville, MD, for defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Syndicated Publications, Inc. ("SPI"), filed this action seeking a declaratory judgment that Montgomery County Code § 11–4 is (1) unconstitutional as applied and construed by the Defendant and (2) preempted by federal law. Plaintiff is also asking the Court to enjoin Montgomery County, Maryland ("County") from initiating any civil or criminal proceeding against the Plaintiff in connection with its use of the subject solicitation. Pending before the Court are the Defendant's motion to dismiss or in the alternative for summary judgment and the Plaintiff's cross motion for summary judgment. Also pending is the Plaintiff's unopposed motion for leave to amend the complaint. The Court has considered the parties' respective memoranda and has conducted a hearing. For the reasons that follow, the Court will grant the Plaintiff's motion for leave to amend. The Court will grant the Defendant's summary judgment motion and deny the Plaintiff's summary judgment motion.

### I. *Background*

SPI is a California corporation that publishes a weekly periodical entitled *Professional Employer*. This newspaper is comprised of business and employment news and a compilation of job opportunities for technical, academic and professional positions nationwide. Each issue contains approximately 25,000 advertisements and is circulated throughout the United States to major city public libraries, universities and national employment search firms.

SPI uses the United States mail to solicit advertisements for its publication. The solicitation contains the following statement: "THIS IS NOT A BILL. THIS IS A SOLICITATION. YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER." SPI includes this statement in the solicitation in an effort to comply

with Postal Service Regulation CO31 §§ 1.1–1.2. That regulation states, in relevant part, that "[a]ny otherwise mailable matter that reasonably could be considered a bill, invoice, or statement of account due, but is in fact a solicitation for an order ... must bear on its face ..." the notice: "THIS IS NOT A BILL. THIS IS A SOLICITATION. YOU ARE UNDER NO OBLIGATION TO PAY THE AMOUNT STATED ABOVE UNLESS YOU ACCEPT THIS OFFER." The Plaintiff's solicitation also includes, on the back of the document, the disclaimer: "We have placed your classified advertisement in our publication. This is a solicitation for that advertisement."

Between September 1994 and November 1995, Montgomery County's Office of Consumer Affairs ("OCA") received written complaints from businesses that had received the Plaintiff's solicitation, including one nonprofit organization. Under § 11–2 of the Montgomery County Code, OCA has the authority to receive and investigate complaints and initiate its own investigation of deceptive or unfair trade practices against consumers, to issue cease and desist orders, and to enforce Montgomery County's Deceptive Trade Practices Act. Pl.'s Ex. D, at 2.

After receiving the complaints, OCA investigator Eric S. Friedman conducted an investigation and concluded that SPI's solicitation is "patently deceptive, if not fraudulent." Affidavit of Eric S. Friedman. The solicitations were found to be violative of § 11–4[1] of the County Code because they are inherently deceptive and misleading in that they appear to be legitimate invoices. Pl.'s Ex. E, at 1. Mr. Friedman asked SPI to enter into a "Cease and Desist Agreement" which would require the Plaintiff to discontinue mailing the solicitations. Pl.'s Ex. F, at 1. The Plaintiff has declined to sign the agreement.

■ The Plaintiff's complaint raises three arguments. First, the Plaintiff claims that the County Code is preempted by 39 U.S.C. § 3001(d) and Postal Regulation CO31. Secondly, the Plaintiff claims that its solicitation is constitutionally protected speech under the First Amendment. Finally, the Plaintiff claims that application of the County Code imposes an unconstitutional burden on interstate commerce.[2]

The County argues at the outset, however, that SPI's complaint is not ripe for adjudication because there is no case or controversy within the confines of Article III of the Constitution. Paper No. 3, at 7. The Court disagrees and finds that this matter is ripe for adjudication. Before we get to the merits of the parties' arguments, the Court will address the ripeness issue.

## II. *Ripeness*

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order for a district court to have jurisdiction to issue a declaratory judgment, (1) there must be a case or controversy within the confines

**1.** The statute at issue in this case states, in relevant part:
**Sec. 11–4. Deceptive trade practices.**
(1) It shall be unlawful for any merchant to engage in a deceptive trade practice whether or not any consumer has, in fact, been misled, deceived or damaged thereby. Deceptive trade practices are: ...
(e) The misrepresentation as to a material fact which has a tendency to mislead.
(f) The failure to state a material fact if such use or failure deceives or tends to deceive ...
(o) Any false, falsely disparaging or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers and is made in connection with the sale, lease, rental, loan or bailment of consumer goods or services; the

offering for sale, lease, rental, loan or bailment of consumer goods or services; the extension of consumer credit; or the collection of consumer debts.
Montgomery County Code § 11–4 (1994).

**2.** SPI sought leave to amend its complaint to add the claim that the Defendant's actions are a violation of the Commerce Clause. Paper No. 7, at 6. In support of its motion, SPI argues that an additional ground for relief did not become entirely apparent until research for its opposition to the Defendant's summary judgment motion was pursued. Paper No. 7, at 1. The Court finds that SPI's request is reasonable. Accordingly, the Court will grant the Plaintiff's motion. *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir.1987).

of Article III of the U.S. Constitution and (2) the court, in its discretion must be satisfied that declaratory relief is appropriate. *White v. National Union Fire Ins. Co.*, 913 F.2d 165 (4th Cir.1990).

The test for a case or controversy is whether the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. *Id.*, citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The question is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *White*, 913 F.2d 165, citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

The test for determining whether declaratory relief is appropriate is (1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue, or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. *White*, 913 F.2d at 168, citing *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F.Supp. 424, 431 (D.D.C.1987).

The County argues that no formal action has been taken against the Plaintiff and no formal action will be taken until, pursuant to the County Code, it becomes apparent that a County consumer has received one of the Plaintiff's solicitations or it becomes likely that a consumer will thereby be misled. Paper No. 3, at 11. Therefore, the County argues, this dispute is hypothetical and the existence of a justiciable controversy is contingent upon the Plaintiff's future actions. *Id.*

This argument fails for two reasons. First, the Court finds that the County has the authority to institute a code enforcement action against the Plaintiff under the Code. The OCA has already received several complaints from businesses that have received the Plaintiff's solicitation. Def.'s Exs. 1–3. Furthermore, the County Code defines consumer as a purchaser, lessee, recipient or prospective purchaser, lessee or recipient of ... consumer goods or services. Montgomery County Code § 11–1 (1994). In this case, a business would be considered a consumer because the business would be purchasing an advertisement through the Plaintiff's solicitation. Therefore, the Court is not persuaded that the County cannot at this time institute a code enforcement action against the Plaintiff under the statute.

Secondly, the Court finds that the OCA has made a final agency decision which renders this case ripe for adjudication. In the context of administrative agency actions, the doctrine of ripeness requires that there be an administrative decision that has been formalized and its effects felt in a concrete way by the Plaintiff. *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir.1992), quoting *Pacific Gas & Electric v. Energy Resources Commission*, 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). The County argues that it has made no final or definite decision that impinges on the Plaintiff's ability to conduct its business. Paper No. 3, at 11. The Court disagrees because the evidence shows that upon receiving complaints from area businesses, the OCA conducted its own investigation into SPI's practices and concluded that its solicitations are "inherently misleading" in violation of chapter 11 of the Montgomery County Code. Def.'s Ex. 1, at 1; Pl.'s Ex. F, at 1. Consequently, the OCA has asked SPI to enter into a Cease and Desist agreement whereby SPI would agree to discontinue its activities in Montgomery County. Pl.'s Ex. F.

SPI argues, and the Court agrees, that this matter became a case or controversy within the confines of Article III when SPI was presented with the choice of either discontinuing its practices or facing penalties and prosecution under the County Code. Paper No. 6, at 7. The Court will not delay the inevitable. The Court finds, therefore, that this matter presents a definite and concrete dispute between parties with adverse legal interests. *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990). The Court also finds that a declaratory judgment is appropriate in this case be-

cause it would serve the useful purpose of clarifying the legal relations between the parties and it would terminate the uncertainty about the legality of SPI's solicitations. *White,* 913 F.2d at 168, citing *National R.R. Passenger Corp. v. Consolidated Rail Corp.,* 670 F.Supp. 424, 431 (D.D.C.1987).

Next, the Court will address the merits of the parties' cross motions for summary judgment.

### III. *Discussion*

■■ Summary judgment will be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While the Court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to the opposing party, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the mere existence of a "scintilla of evidence" is not enough to frustrate the motion. To defeat a motion for summary judgment, a party must present evidence of specific facts from which the finder of fact could reasonably find for him. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### A. *Federal Preemption*

The Supremacy Clause of the United States Constitution states that "the Laws of the United States ... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 2. Thus, federal legislation, if enacted pursuant to Congress' lawful authority, can nullify conflicting state or local actions. *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1412 (4th Cir.1994), citing *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819). However, the Supreme Court has instructed that consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by ...

Federal Act unless that is the clear and manifest purpose of Congress. *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1412 (4th Cir. 1994), citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). The Supreme Court has consistently recognized the inherent authority of states and local jurisdictions to protect their consumers from deceptive trade practices and to regulate commercial transactions. *See, e.g., Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

■ There are three ways for preemption to occur. First, Congress may expressly provide that federal law supplants state authority in a particular field. Secondly, Congress' intent to preempt may be implicit in regulating so pervasively in the field so as not to leave any room within which a state may act. *Feikema v. Texaco, Inc.,* 16 F.3d 1408, 1412 (4th Cir.1994), citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Finally, even absent an express or implied congressional intent to preempt state authority in a field, state law is preempted to the extent that it actually conflicts with federal law. *Feikema,* 16 F.3d at 1412, citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Com.,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983).

■ The federal statute at issue in this case provides that any mailable matter that reasonably could be considered a bill, invoice, or statement of account due, but is in fact a solicitation for an order, must bear a notice in words which the Postal Service prescribes. 39 U.S.C. § 3001(d). Postal Regulation CO31 outlines what those words should be and how they should appear. Here, all parties agree that there is no express federal preemption of Montgomery County's Code. Therefore, the Court must decide whether Congress impliedly intended to preempt state authority in this field or whether the Montgomery County Code actually conflicts with the federal statute in this case. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Com.,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722.

SPI argues that since Congress and the Postal Service have created a pervasive scheme of federal regulation that tightly defines and restricts the content and form of its solicitations, Montgomery County's attempts to regulate these same solicitations is null and void under the Supremacy Clause of the Constitution. Paper No. 6, at 12. The Court disagrees and finds that there is no implied federal preemption in this case. *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973).

In *Lockheed*, the court held that the Noise Control Act of 1972 impliedly preempted a city ordinance which sought to place a curfew on jet flights from the city's airport. *Id.* at 638, 93 S.Ct. at 1862. The court reasoned that although noise control is deep-seated in the police power of the States, the pervasive control vested in the Federal Aviation Administration under the Act leaves no room for local curfews. *Id.* The court stated that "[f]ederal control is intensive and exclusive ... The moment a plane taxis onto a runway it is caught up in an elaborate and detailed system of controls." *Lockheed*, 411 U.S. at 633, 93 S.Ct. at 1859; *citing Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 (1944). There was ample evidence in *Lockheed* to suggest that Congress clearly intended to preempt that field and to vest exclusive control in the FAA.

The Court finds that no such exclusivity or pervasiveness is present in the instant case. Although Postal Regulation CO31 contains a detailed list of requirements for mailing invoice-like solicitations, there is no evidence to suggest that Congress intended to preempt the entire field of invoice-like solicitations. In fact, the particularity of the regulation suggests that Congress merely intended to specifically regulate the *mailability* of such solicitations. By contrast, *Lockheed* dealt with federal and local enactments in the same area of noise level of jet aircrafts.

 Our next inquiry is whether the state law in this case actually conflicts with the federal law. The test is whether it is impossible to comply with both state and federal law or whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law. *Feikema*, 16 F.3d at 1413, *citing Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

The Supreme Court distinguished between a federal statute prohibiting the mailing of obscene materials and a state law prohibiting the keeping of such materials and found that the federal statute deals only with actual mailing; it does not eliminate the power of the state to punish 'keeping for sale' or 'advertising' obscene material. *Roth v. United States*, 354 U.S. 476, 493, 77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498 (1957). The Court held, therefore, that the state statute was not preempted by the federal statute. *Id.*

Similarly, in this case, the federal regulations at issue regulate the *mailing* of invoice-like solicitations while the County Code prohibits deceptive trade practices; the County Code in no way purports to regulate the mailability of these solicitations. It is possible, therefore, to comply with both the federal regulations and the County Code. Accordingly, the Court finds that there is no conflict between the two statutes. *Id.*

B. *Commerce Clause*

 In its amended complaint, SPI alleges that the County's attempt to tailor its solicitations to meet County requirements beyond those required by the Postal Service Regulation CO31 will impose a substantial burden on interstate commerce. Paper No. 7, at 6. SPI argues in its cross motion for summary judgment, however, that the County's actions violate the "Dormant" Commerce Clause. Paper No. 6, at 23. The Court finds that the County has violated neither the Commerce Clause nor the "Dormant" Commerce Clause.

The Commerce Clause states that "Congress shall have Power to regulate Commerce with foreign Nations, and among the several States ..." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause, even without implementing legislation by Congress, is a limitation upon the power of the States. *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976), *citing Freeman v. Hewit*,

329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265 (1946). However, states retain broad power to legislate protection for their citizens in matters of local concern ... *Great Atlantic*, 424 U.S. at 371, 96 S.Ct. at 928, *citing H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 531–532, 69 S.Ct. 657, 661–62, 93 L.Ed. 865 (1949).

The Supreme Court has outlined the test for determining the validity of state statutes that have an effect on interstate commerce:

"Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

*Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371–72, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976) (citations omitted).

SPI argues, citing *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 349–350, 97 S.Ct. 2434, 2444–45, 53 L.Ed.2d 383 (1977), that County–by–County regulations on mailed solicitations that require different information or formats to be reflected in those solicitations substantially burden interstate commerce. Paper No. 6, at 24. The County responds, and the Court agrees, that the County statute does not expressly or impliedly differentiate between in-state or out-of-state commerce and, therefore, it does not violate the Dormant Commerce Clause. Paper No. 8, at 7.

In *Hunt*, the Supreme Court held that the local statute was an unconstitutional burden on interstate commerce because, despite its declared purpose of protecting consumers from fraud, it operated to the advantage of local apple producers by discriminating against out of state competitors. *Id.*, at 352–353, 97 S.Ct. at 2446. For example, Washington Apple had to endure great expense to comply with North Carolina's labeling statute

while local producers did not. *Hunt*, at 352, 97 S.Ct. at 2446. The Court finds that there is no such discrimination or economic protectionism in the instant case. Therefore, the *Hunt* case is inapposite.

SPI also argues, citing *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981), that only the most profitable of businesses could afford to tailor their solicitations to the regulations of each county if each county were permitted to enforce different requirements as to the content of those solicitations. Paper No. 6, at 25. The Court is not persuaded by this argument for two reasons. First, the evidence shows that the County statute does not impose specific requirements regarding the content of solicitations circulated to or within Montgomery County. The statute simply makes it unlawful to engage in trade practices which have the capacity or tendency to mislead.

Secondly, the *Kassel* case can be distinguished from the instant case. In *Kassel*, the statute at issue prohibited the use of 65 foot trucks within Iowa's borders while all other states in the west and midwest allowed them. *Id.*, at 665, 101 S.Ct. at 1313. The plaintiff demonstrated to the Court that the statute was a substantial burden on interstate commerce by providing evidence that (1) statistically, 65 foot trucks were as safe as 55 foot trucks, (2) routing 65 foot trucks around Iowa resulted in increased costs and (3) Iowa's statute may aggravate the problem of highway accidents. *Id.*, at 664, 101 S.Ct. at 1313. The court concluded that Iowa's statute impermissibly burdened interstate commerce. *Id.*, at 672, 101 S.Ct. at 1317.

In contrast, SPI has not even presented evidence to suggest whether and how Montgomery County's statute is different from other counties in the country. When asked in the March 11, 1996 motions hearing what other counties' statutes require, SPI responded by saying that the rest of the country is presumably following the federal law, but Montgomery County has a different law. Under *Kassel*, this explanation does not provide the Court with enough evidence to con-

clude that the County's statute violates the Commerce Clause.

Finally, SPI argues that the federal regulations provide a less restrictive alternative because adherence to a single national standard is less burdensome than complying with a different statute in each county. Paper No. 6, at 26. As discussed above, the Court finds that the County statute, which prohibits trade practices having the capacity or tendency to mislead, is not unconstitutionally burdensome and does not discriminate against interstate commerce. *See, e.g., Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 349–350, 97 S.Ct. 2434, 2444–45, 53 L.Ed.2d 383 (1977); *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 674, 101 S.Ct. 1309, 1318, 67 L.Ed.2d 580 (1981). Therefore, the Court need not address the question of whether there are less restrictive alternatives to further the state's interest. Furthermore, the Court finds that any burden on interstate commerce caused by the County statute is incidental and is not excessive in relation to the local benefit of consumer protection against deceptive trade practices. *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 U.S. 366, 371–72, 96 S.Ct. 923, 928. Therefore, the Court concludes that Montgomery County Code § 11–4 does not violate the Commerce Clause.

## C. *First Amendment*

■ The First Amendment protects commercial speech from unwarranted governmental regulation. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761–762, 96 S.Ct. 1817, 1825–26, 48 L.Ed.2d 346 (1976). However, the Constitution accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

State and federal government are free to prevent the dissemination of commercial speech that is false, deceptive or misleading. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985).

■ The Supreme Court has outlined a four-part test for determining whether commercial speech should be protected by the First Amendment. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Commercial speech receives a limited form of First Amendment protection as long as it concerns lawful activity and is not misleading or fraudulent. *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986), *citing Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351. Once it is determined that the speech is protected by the First Amendment, then the speech may be restricted only if the government's interest in doing so is substantial, the restrictions directly advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve that interest. *Id.*

■ Applying the first step in the *Central Hudson* test, the Court must decide whether SPI's solicitation is misleading. SPI contends that since its solicitation complies with Postal Regulation C031 and 39 U.S.C. § 3001(d), it is not misleading. Paper No. 6, at 29.[3] After examining the solicitation and comparing it with the federal requirements, the Court finds that it does not fully comply with federal law.

For example, § 1.2 of the regulations requires the disclaimer language to be no smaller than 30–point type. Although it appears that at least one of SPI's disclaimers

---

**3.** SPI also argues that the County Code is impermissibly overbroad because it seeks to prevent speech that comports with federal law and is not intrinsically deceptive. Paper No. 6, at 29. All speech, SPI contends, is capable of deception given unusual contexts and overly susceptible recipients. *Id.* The Supreme Court has observed that the justification for the application of the overbreadth analysis applies weakly, if at all, in the ordinary commercial context. *Ohralik v.*

*Ohio State Bar Ass'n*, 436 U.S. 447, 462 n. 20, 98 S.Ct. 1912, 1922 n. 20, 56 L.Ed.2d 444 (1978), *citing Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977). Since advertising is linked to commercial well-being, the court reasoned, it seems unlikely that such speech is particularly susceptible to being crushed by overbroad regulation. Therefore, the Court is not persuaded by this argument.

is at least 30–point type, it has altered the federal model to make the required disclaimers less prominent in relation to the size of the page. The Court also notes that one of the three disclaimers contained in SPI's solicitation is printed on the back of the document and may not be read if photocopied since it is possible to inadvertently neglect to photocopy the back of the document.[4] In addition, SPI has made the words "AMOUNT" and "MAKE CHECK PAYABLE TO" more prominent than they appear on the federal model. The postal regulations provide a sample of how the solicitation should appear as a whole. Pl.'s Ex. B, at 2. The federal model is less likely to be mistaken for an invoice. Even SPI agrees, however, that its solicitation can double as an invoice. Paper No. 2, at 3.

The Court finds that there is additional evidence to suggest that SPI's solicitations are misleading. For example, between September 1994 and November 1995, Montgomery County's Office of Consumer Affairs received written complaints from businesses that had received the Plaintiff's solicitation, including one nonprofit organization. These individuals complained of mistaking or nearly mistaking the solicitation for a bill. Def.'s Exs. 1–3. Also, Eric S. Friedman, an investigator with the OCA, stated in his Supplemental Affidavit that several Montgomery County departments had received the Plaintiff's unsolicited invoices and paid them believing that they were legitimate invoices for services rendered when, in fact, they were not. As of the date of the Affidavit, the County had not been reimbursed.

Other evidence of the solicitation's misleading nature include the fact that recipients are targeted to receive them because they have, in fact, placed a classified advertisement in a legitimate newspaper and, therefore, may be expecting to receive an invoice. Pl.'s Ex. E, at 1. The disclaimer language required by the federal regulations is printed in a yellow ink which will disappear when the

solicitation is photocopied and it is common practice for invoices to be photocopied when they are routed to a recipient's accounts payable department. *Id.* These facts were considered by the OCA in its determination that SPI's solicitations are misleading. Pl.'s Ex. E, at 1. The Court finds that there is sufficient evidence to suggest that the subject solicitations are in fact misleading and, therefore, should not be accorded First Amendment protection. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

Even if SPI's solicitation were determined to be protected commercial speech, § 11–4 of the Montgomery County Code would still survive First Amendment scrutiny because the County has identified a substantial governmental interest and its restriction directly advances that asserted interest. *See, Edenfield v. Fane*, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). The County has stated that the clear intent of the Montgomery County Deceptive Trade Practices Act, and of the County's enforcement efforts, is to protect unwary County consumers from fraudulent, misleading, and deceptive practices. Paper No. 3, at 17. The Supreme Court has long recognized the state's general interest in protecting consumers and regulating commercial transactions. *See, e.g. Ohralik v. Ohio State Bar Ass'n*, 436 U.S. at 458, 461, 98 S.Ct. at 1919, 1921. A ban on such deceptive and misleading practices would clearly advance this interest.

The Court notes that there may be less restrictive alternatives such as circulating flyers warning potential victims to pay closer attention to these invoice-like solicitations. However, a complete ban on misleading commercial speech has been approved by the Supreme Court. *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1980); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447

---

4. The disclaimer on the back of the document reads: "Your advertisement which appeared in Professional Employer was selected from a major newspaper or magazine where it originally appeared. Based on that publication we printed your advertisement and placed it in a section of our publication which we believed would be most helpful to persons seeking employment. Your advertisement was printed without consulting you or the publication where your advertisement previously appeared." Pl.'s Ex. A, at 2.

U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980).

The Court has determined that SPI's solicitations are misleading and, therefore, are not protected by the First Amendment. However, the Court's inquiry does not end there. The Court is faced with deciding whether Montgomery County can regulate speech that has the "capacity" or "tendency" to mislead. Montgomery County Code, § 11–4(1)(o). The Court finds that Montgomery County can regulate speech having a "tendency" or "capacity" to mislead.

The Supreme Court has held that the government may ban forms of communication more likely to deceive the public than to inform it. *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In *Friedman,* the court held that a state law prohibiting the practice of optometry under a trade name was not a violation of the First Amendment because the law furthered the state's interest in protecting the public from the deceptive and misleading use of optometrical trade names. The court stated that there is a "significant possibility that trade names will be used to mislead the public and the possibilities for deception are numerous." *Friedman,* 440 U.S. at 13, 99 S.Ct. at 896.

If the Supreme Court has upheld, as constitutional, bans on commercial speech that is "more likely" to deceive the public than to inform it, and commercial speech that has a "significant possibility" of misleading the public, then *a fortiori,* Montgomery County's ban on commercial speech that has a "tendency" or "capacity" to mislead passes constitutional muster. *Friedman v. Rogers,* 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980).

### IV. *Conclusion*

This matter is ripe for adjudication because it presents a definite and concrete dispute between parties with adverse legal interests. There is no federal preemption of the Montgomery County Code because there is no conflict between the statutes at issue in this case and there is no evidence that Congress intended to preempt the field of invoice-like solicitations.

Montgomery County has not violated the Commerce Clause because the County Code does not discriminate against interstate commerce. Any affect on interstate commerce is incidental and is outweighed by the local benefit of consumer protection against deceptive trade practices. Finally, SPI's solicitation is not entitled to First Amendment protection because it is deceptive and misleading commercial speech. Accordingly, the Court will grant the Defendant's summary judgment motion and deny the Plaintiff's summary judgment motion.

A separate order consistent with this opinion will issue.

### ORDER

For the reasons set forth in the attached Memorandum Opinion, IT IS this 9th day of April 1996, hereby **ORDERED:**

1. That the Plaintiff's motion for leave to amend BE and the same hereby is **GRANTED;**

2. That the Defendant's motion for summary judgment BE, and the same hereby IS, **GRANTED;**

3. That the Plaintiff's cross motion for summary judgment BE, and the same hereby IS, **DENIED.**