Yenis IRAHETA

v.

**UNITED OF OMAHA LIFE INSURANCE CO., et al.**

**No. CIV.A.DKC 2004–794.**

United States District Court,
D. Maryland.

Jan. 25, 2005.

Douglas P. Desjardins, R. Jack Clapp and Associates Co. LPA, Washington, DC, for Plaintiff.

Robert W. Hesselbacher, Jr., Wright Constable and Skeen LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

CHAŚANOW, District Judge.

Presently pending and ready for resolution in this diversity action are Defendants' motion for partial summary judgment and Plaintiff's responsive motion for partial dismissal. The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff will be permitted to amend the complaint to delete certain claims, and Defendants' motion for summary judgment on count one will be denied.

## I. Background

### A. Procedural Background

Plaintiff Yenis Iraheta originally filed a four count complaint in the Circuit Court for Prince George's County, asserting claims for (1) breach of contract under policy UA8349743; (2) breach of contract under policy UA8467366; (3) breach of covenant of good faith and fair dealing (insurer unreasonably withheld payment of beneficiary's claim); and (4) unfair settlement practices.

The complaint alleges that Defendant United of Omaha Life Insurance Co. ("United of Omaha"), an affiliate of Defendant Mutual of Omaha Insurance Co. ("Mutual of Omaha"), issued a term life

insurance policy, No. UA8349743, to Ruben Alberto Hidalgo–Gongora on or about January 1, 2002, which provided that in the event of his death, the amount of $200,000 would be paid to his fiancé, Plaintiff Yenis Iraheta. On or about July 30, 2002, United of Omaha issued a permanent life insurance policy, No. UA8467366, in the amount of $100,000, which provided that that sum would be paid to Plaintiff in the event of Mr. Hidalgo–Gongora's death. On September 1, 2002, Mr. Hidalgo–Gongora died as a result of a car accident. Despite proper notice, the benefits have not been paid and Plaintiff claims entitlement to $300,000. In addition, Plaintiff seeks damages for emotional distress, as well as attorneys' fees and costs.

Defendants United of Omaha and Mutual of Omaha removed the action to this court on the basis of diversity jurisdiction and answered the complaint, essentially denying that any payments are due. Among other averments, Defendants deny paragraph 15 which alleges that Policy UA8467366 took effect on August 1, 2002 and was in full force and effect at all times thereafter. The answer also denies the allegations of count II. The second defense, however, states that "At the request of the insured, Policy UA8349743 was cancelled and replaced by Policy No. 8467366 on or about August 1, 2002." *See* Paper 7.

After discovery, Defendants moved for partial summary judgment as to counts I, III, IV, and the claims for emotional distress damages and attorneys' fees and costs, but not as to count II. Paper 24. Plaintiff then filed a partial dismissal of counts III and IV, as well as the claims for emotional distress damages and attorney's fees, reserving her right to seek an administrative remedy with the Maryland Insurance Administration. Paper 25. Defendants oppose partial dismissal without prejudice.

## B. Factual Background

In December 2001, Suzanne Katz, a representative of Mutual of Omaha, held a meeting with Ruben Alberto Hidalgo–Gongora, an employee of A.L. Smith Glass Company, during which he completed an application for a $200,000 term life insurance policy. The application was approved and was issued effective January 1, 2002, with premium payments to be made through his employer's payroll deduction program.

Several months later, Mr. Hidalgo–Gongora contacted Ms. Katz and they met on June 6, 2002, to discuss replacing the policy with permanent coverage. He signed an application for a $100,000 policy. According to Ms. Katz, a box indicating that the new policy was not replacing another was at first mistakenly marked "no" but that she changed it to "yes" before Mr. Hidalgo–Gongora signed it. The application was processed by Mutual of Omaha because the Term policy provided the insured with the right to convert without additional proof of insurability. Payment of the premiums for the initial policy was through payroll deduction of $26.34 per month. The premium for the new policy was to be $52.00 per month, also to be paid through payroll deduction.

Mutual of Omaha processed the conversion and issued the new policy effective August 1, 2002. August 1, 2002 was also the cancellation date of the former policy. Ms. Katz received the new policy and delivered it to Mr. Hidalgo–Gongora on August 30, 2002, and received a written receipt from him. She noticed, however, that the monthly premium was incorrectly stated to be $104, rather than $52, so she took back the policy to verify that it had been issued with the correct premium.

Early the next week she learned of Mr. Hidalgo–Gongora's untimely death. On September 6, 2002, she went to his em-

ployer to obtain a check for the balance due on the first month's premium on the new policy and received a check for $26.55 (the balance due was actually $25.66).[1]

Plaintiff contends that the $200,000 term policy was still in place because that was the only policy for which Mr. Hidalgo–Gongora had authorized a payroll deduction for the premium before his death. Without proper consideration for the new policy, Plaintiff contends that it could not be effective and thus could not replace the first policy. Further, Plaintiff contends that the written application with the change to the box regarding replacement violates section 12–206(c)(1) of Maryland's Insurance Article. *See* Md.Code Ann., Ins. § 12–206(c)(1) (2003).

## II. Analysis

### A. Counts III and IV and Claims for Emotional Distress Damages and Attorneys' Fees.

Plaintiff seeks to amend her complaint to delete the claims in counts III and IV, as well as those for emotional distress damages and attorneys' fees, but is concerned that she do so in a manner so as not to jeopardize any right she might have to pursue an administrative claim with the Maryland Insurance Administration under Maryland's Unfair Claim Settlement Practices Act. *See* Md.Code Ann., Ins. §§ 27–301 to –306 (2002). Because of their pending motion for partial summary judgment, Defendants oppose any dismissal without prejudice in order to protect against Plaintiff being able again to bring those claims in court.

### 1. Standard of Review

Although only in an unpublished opinion, the Fourth Circuit has indicated that Fed. R.Civ.P. 15 is the technically proper rule

under which to consider a plaintiff's request to drop some, but not all, of the claims asserted in an action:

> As a threshold issue, the parties disagree about whether the district court's exercise of discretion regarding the [plaintiffs'] motion to amend should have been governed by the standards applicable to Rule 41(a)(2) (voluntary dismissal) or Rule 15(a) (amendment). The effect of the [plaintiffs'] amendment would have been to dismiss some, but not all, of their claims. Because Rule 41 provides for the dismissal of actions, rather than claims, Rule 15 is technically the proper vehicle to accomplish a partial dismissal. *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1392 (9th Cir.1988); *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 517–18 (Fed.Cir.1987); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.06–1, at 41–92 to –93 (1995) ("Moore's"). However, similar standards govern the exercise of discretion under either rule. *Mechmetals Corp. v. Telex Computer Prods., Inc.,* 709 F.2d 1287, 1294 (1983); Moore's at 41–92 ("Since the structure of the two rules is similar, and since the district court's discretion is involved when leave of court is required, whether plaintiff's motion is made under Rule 15 or under Rule 41(a)(2), the choice of rules is largely a formal matter.").

*Skinner v. First Am. Bank of Virginia,* 64 F.3d 659, 1995 WL 507264, *2–3 (4th Cir. 1995) (internal footnote omitted). The standard under Rule 15 is somewhat flexible:

> Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." However, leave to amend is not to be granted automatically, and the decision whether to do so

---

**1.** By continued payroll deduction, the amount of $26.34 had been paid. Mutual of Omaha

credited that amount to the new policy, thus, creating a balance of $25.66.

rests within the sound discretion of the district court. *Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988); *see National Bank of Washington v. Pearson,* 863 F.2d 322, 327 (4th Cir.1988). A district court may properly deny leave in light of undue delay, bad faith, or prejudice to the opposing party. *Deasy,* 833 F.2d at 40; *Pearson,* 863 F.2d at 327–28. In particular, the court may take into account the stage of the proceedings when deciding whether to grant leave. *See Deasy,* 833 F.2d at 41 (leave to amend properly denied when motion to amend came right before trial and after discovery was complete).

*Id.* Similarly, Rule 41 leaves the matter to the discretion of the district judge:

> A motion to dismiss under Rule 41(a)(2) also lies within the district court's discretion. *Davis v. USX Corp.,* 819 F.2d 1270, 1273 (4th Cir.1987). In considering a motion for voluntary dismissal, a district court must focus primarily on protecting the interests of the defendant, and the court may deny the motion if the defendant would be unfairly prejudiced. *Id.; see Andes v. Versant Corp.,* 788 F.2d 1033, 1036 (4th Cir.1986). The expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal. *Andes,* 788 F.2d at 1036–37. Accordingly, we have noted that "denial of voluntary dismissal is appropriate where summary judgment is imminent." *Davis,* 819 F.2d at 1274 (citing *Pace v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir. 1969)); *see also [Davis,* 819 F.2d] at 1277 (voluntary dismissal without prejudice improper with respect to claims "faced with imminent adverse determination in a federal action.") (Phillips, J., dissenting); *Armstrong v. Frostie Co.,* 453 F.2d 914, 916 (4th Cir.1971) (dismissal under 41(a)(2) would have been

properly denied where defendant had already moved for summary judgment). *Id.* (internal footnote omitted).

### 2. Discussion

■ Although the parties have completed discovery, the bulk of it would have been just as necessary if only counts I and II were involved as that actually conducted on all four claims. Thus, Defendants would not be unfairly prejudiced if Plaintiff were permitted to amend the complaint to delete counts III and IV, as well as the claims for emotional distress damages and attorneys' fees.

Moreover, the summary judgment motion as to these claims is based on *Hartz v. Liberty Mutual Ins. Co.,* 269 F.3d 474 (4th Cir.2001), recognizing that:

> [T]he provisions of the Maryland Code for unfair settlement practices provide only for administrative remedies. *See* Md.Code Ann., [Ins.] § 27–301 (2000). This may lead to some delay or perceived inequity. However, Maryland has decided that the balance between the costs of insurance policies for its citizens and delays in settling insurance claims is best struck with an administrative process. We have no authority to alter that decision.

*Id.* at 476. Defendants do not seem to object to Plaintiff bringing an administrative action, but would object to having to litigate the claims anew in a court. *See* Paper 26. However, given the clarity of the law on this issue as expressed in *Hartz,* their fear is insubstantial. Accordingly, Plaintiff will be permitted to amend her complaint to delete the claims in counts III and IV, and the damages claims for emotional distress and attorneys' fees.

### B. Count I: $200,000 term life policy

### 1. Summary Judgment Standard

It is well established that a motion for summary judgment will be granted only if

there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) states in relevant part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct.

2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810, 118 S.Ct. 52, 139 L.Ed.2d 17 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### 2. Discussion

As noted at the outset of this opinion, Plaintiff seeks a total of $300,000 on the two life insurance policies, asserting in the complaint that both policies were in effect when the insured died. Defendants' position in their answer is that neither policy was in effect at that time and that, accordingly, no sum is due. In their summary judgment papers, however, Defendants now seem to assert that the $200,000 policy was not in effect because it was replaced by the $100,000 policy a month before the insured's death. *See* Paper 24 at 6–7. They have not, however, sought to amend their answer.

■ There is no dispute that Defendant issued a $200,000 term life insurance policy UA8349743 to the decedent on or about January 1, 2002, nor that he discussed replacing that policy with a smaller $100,000 whole life policy. What is in dispute is whether the conversion/replacement took place before his death. Al-

though Defendants appear to contend in their moving papers that the $100,000 whole life policy was in effect at the time of Mr. Hidalgo–Gongora's death, their answer denies that any payment is due. If the $200,000 term life policy was only to be cancelled if a new replacement whole life policy was in effect, then there obviously remains a dispute as to which of the policies was in effect. Accordingly, summary judgment will be denied and it is not necessary to address Plaintiff's contentions that there was a failure of consideration for the replacement policy because the payroll deduction had not been changed to reflect the new, higher premium, nor that the change to the application without written authorization from the policy holder rendered the contract.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion to amend her complaint to delete counts III and IV and the claims for emotional distress damages and attorneys' fees will be granted. In addition, Defendants' motion for partial summary judgment will be denied. A separate Order will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 25th day of January, 2005, by the United States District Court for the District of Maryland, ORDERED that:

1. The motion by Plaintiff Yenis Iraheta for leave to amend (Paper 25) BE, and the same hereby IS, GRANTED;

2. Counts III and IV, and the claims for emotional distress damages and attorneys' fees BE, and the same hereby ARE, DISMISSED without prejudice;

3. The motion by Defendants United of Omaha Life Insurance Co. and Mutual of Omaha Insurance Co. for summary judgment as to count I (Paper 24) BE, and the same hereby IS, DENIED;

4. A telephone scheduling conference will be held Thursday, February 3, 2005, at 9:00 a.m. and chambers will contact counsel at the telephone numbers reflected in the court file unless notified that another number should be used; and

5. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.