Lauri Jo HARTZ, Plaintiff–Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY; Liberty Mutual Fire Insurance Company; Liberty Mutual Group, Defendants–Appellees.

No. 00–2495.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 25, 2001.

Decided Oct. 29, 2001.

**ARGUED:** C. William Michaels, Baltimore, MD, for Plaintiff–Appellant. Michael McGowan, McGowan & Smathers, L.L.P., Laurel, MD, for Defendants–Appellees.

Before WILKINSON, Chief Judge, and WILKINS and TRAXLER, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge WILKINS and Judge TRAXLER joined.

## OPINION

WILKINSON, Chief Judge:

The district court granted summary judgment for Liberty Mutual Insurance Company. The court held that Lauri Jo Hartz's complaint was styled in tort not contract, and Maryland law provides no first-party action in tort against an insurer for bad faith failure to settle a claim. We affirm.

### I.

Plaintiff Lauri Jo Hartz and her husband, Benjamin Hartz, had a homeowner's insurance policy for their residence in Rockville, Maryland. The policy was issued by Liberty Mutual Insurance Company. On January 12, 1997, a fire broke out in the Hartz home which resulted in substantial smoke damage. There were no personal injuries resulting from the fire.

Hartz promptly filed a claim with Liberty Mutual. Hartz found it difficult to be in her home after the fire because the smoke aggravated her asthma. Hartz informed Liberty Mutual of her medical condition and Liberty Mutual knew the claim needed to be expedited.

Within days of Hartz's initial claim, Liberty Mutual sent out a crew to clean the smoke-damaged carpet and furniture. However, neither that crew nor a subse-

quent crew was able to successfully repair the damage. Hartz's asthma began to worsen and she was unable to stay in her home, even though other family members were able to do so. Eventually, it became necessary to hire appraisers and get estimates for the remaining clean-up and replacement costs.

Hartz selected an appraiser, but Liberty Mutual rejected her appraiser. Liberty Mutual asserted that the appraiser was not impartial as required by the policy. However, Hartz argued that the policy only required that the appraiser be competent. After lengthy delays, Liberty Mutual finally agreed to Hartz's appraiser. Yet the delays continued and Hartz decided to hire counsel and file a complaint with the Maryland Insurance Administration ("MIA") seeking to compel Liberty Mutual to finalize the insurance claim.

On April 17, 1998, the Maryland Insurance Commissioner issued an opinion which found that Liberty Mutual had misrepresented portions of the policy with respect to the selection of an appraiser. The Insurance Commissioner ruled that Liberty Mutual had not acted in good faith and had "stopped the appraisal process" by refusing to accept Hartz's appraiser. By August, 1998, the Hartz home had been properly cleaned and the damaged items had been replaced. All claims under the policy had been paid. In March 1999, a Consent Order was executed in which Liberty Mutual acknowledged that it had violated the unfair claim settlement provision of the Maryland Code, Md.Code Ann., [Ins.] § 27–303(1), and Hartz's policy by objecting to Hartz's appraiser. Liberty Mutual agreed to pay a $500 fine.

Hartz then brought this action, alleging that the eighteen month delay in settling her claim adversely impacted her health and prevented her from working from home. Hartz alleged that this delay was a direct result of Liberty Mutual's unreasonable and improper conduct. The district court determined that, under Maryland law, there was no private right of action against an insurance company in tort for failure to settle a claim with an insured. The court further held that any contract action Hartz had was moot because Liberty Mutual had already paid Hartz's claims for damages to her home as a result of the fire. The district court granted summary judgment for Liberty Mutual. Hartz appeals.

## II.

Hartz has pleaded a variety of counts including misrepresentation, tort arising from contract, and intentional infliction of emotional distress. The problem of delay in claims settlement procedures is a real one, and we do not minimize the difficulties that Hartz experienced at the hands of her insurer. We perceive several problems, however, with Hartz's complaint.

### A.

. ■ To begin with, the complaint attempts to circumvent Maryland's established administrative process for dealing with insurance complaints. The MIA is an independent agency that regulates Maryland's insurance companies, agents, and brokers by enforcing the state's insurance laws. Md.Code Ann., [Ins.] § 2–101–114, 2–201–214 (2000). The MIA is responsible for, *inter alia*, investigating consumer complaints about insurance coverage, licensing insurance companies, and investigating acts of insurance fraud. *Id.* Consumers like Hartz may file complaints with the Consumer Complaint Investigation Section of the MIA, which investigates and resolves complaints made by policyholders. For example, claims can be filed for alleged unfair settlement practices, which include misrepresenting pertinent facts or policy provisions, refusing to pay a claim for an arbitrary or capricious reason, and failing to settle a claim promptly. Md. Code Ann., [Ins.] § 27–303 (2000). The MIA not only has the power to fine insurance companies, but may, after repeated violations, revoke the company's license to

sell insurance in Maryland. Md.Code Ann., [Ins.] §§ 27–305 & 4–113 (2000).

In this case, a fine was levied by the MIA and Hartz's claim was eventually settled. Hartz is now attempting to circumvent Maryland's system in court. But the federal courts simply have no license to upend Maryland's decision to resolve this sort of insurance complaint administratively. Indeed, the provisions of the Maryland Code for unfair settlement practices provide only for administrative remedies. *See* Md.Code Ann., [Ins.] § 27–301 (2000). This may lead to some delay or perceived inequity. However, Maryland has decided that the balance between the costs of insurance policies for its citizens and delays in settling insurance claims is best struck with an administrative process. We have no authority to alter that decision.

### B.

■ Second, Hartz claims she was only bringing a breach of contract action for consequential damages. There is no dispute that all of Hartz's claims under the homeowner's policy for the fire have now been paid in full. Hartz has pointed to nothing that would permit recovery beyond the coverage of the subject policy. *See* Md.Code Ann., [Ins.] § 27–305 (making restitution, subject to the policy limits, a penalty for unfair trade practices); Md.Code Ann., [Ins.] § 19–203 (2000) (generally restricting coverage for medical expenses under a homeowner's policy). Maryland has declined to enact a statute providing for collection of damages beyond the confines of the insurance agreement. *See generally* 47 A.L.R.3d § 314 (2001); 44 Am.Jur.2d Insurance §§ 1771–1772 (1982). To allow Hartz to now make claims for damages beyond the policy limits because of a preexisting medical condition or other consequential business de-

velopments would fundamentally alter this insurance contract.

Moreover, a breach of contract does not typically give rise to an action in tort. By styling her complaint as one for breach of contract, Hartz attempts to avoid the Maryland bar against tort actions. No amount of artful pleading such as terming the damages "consequential" can disguise what Hartz is seeking—extra-contractual damages for additional medical expenses, business losses, and emotional distress. These damages do not arise naturally from her homeowner's insurance policy. These damages resulted from Liberty Mutual's delay. And Maryland has made a considered decision not to recognize a tort action for bad faith failure to settle with an insured. *Mesmer*, 725 A.2d at 1058 ("A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis.").

The Maryland Court of Appeals has repeatedly held that the duty which is owed to an insured for failure to settle a claim sounds in contract and not in tort. *See, e.g., Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 741 A.2d 1099, 1107–08 (Md.1999) ("Under Maryland law, an insurer who mistakenly denies coverage does not breach a tort duty owed either to the insured or to third-party claimants.... Instead, the duty owed ... is entirely contractual."). The Maryland rule serves to "confine actions between an insured and his or her insurer to the realm of contract law, rather than letting such actions expand to tort proportions." *Yuen v. Am. Republic Ins. Co.*, 786 F.Supp. 531, 533 (D.Md.1992). The decision of how to regulate insurance companies and remedy consumer complaints is a core issue of state policy which federal courts are bound to

follow, not free to reconstruct.*

### C.

Liberty Mutual also objects on the merits of Hartz's claims. With respect to the intentional misrepresentation count, the insurer claims that there was no evidence it knew the misrepresentation was false or that Hartz in any way justifiably relied upon it. In addition, because there was no tort involved here at all, Liberty Mutual claims that Hartz's count of tort arising from contract must likewise fail. Finally, the insurer contends that any misconduct on its part falls well below the high threshold necessary to maintain an action in Maryland for intentional infliction of emotional distress.

In view of our earlier discussion, we see no need to address the merits of Hartz's underlying tort claims. It is enough to note that our system of federalism requires the federal courts to respect the administrative structure established by the Maryland legislature for processing claims of this sort. In doing so, we respect as well the decision of the Maryland courts not to supplant that structure with tort actions seeking unanticipated damages arising out of the claims settlement process.

The judgment of the district court is accordingly

*AFFIRMED.*

* We do not address here the recovery of expenses such as attorney's fees where an insurer breaches a duty to defend, thus requiring an insured to defend itself in an action brought by an injured third-party. The instant case deals with the quite different question of whether there is a first-party action in tort against an insurer for failure to settle a claim. *See, e.g., Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 355 Md. 566, 735 A.2d 1081, 1095 (Md.1999) (stating that the "exception to the American rule is limited to the enforcement of 'third-party liability coverage' and does not apply to actions to enforce first party coverage").