David L. REICHER, D.P.M.; Affiliated Podiatrists, P.A., Plaintiffs, Appellants,

v.

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA; The Guardian Life Insurance Company of America, Defendants, Appellees.

No. 03–1559.

United States Court of Appeals, First Circuit.

Heard Jan. 8, 2004.

Decided Feb. 23, 2004.

Michael K. Mattchen, with whom Edward T. Dangel, III was on brief for appellants.

Edward K. Kimball, with whom David L. Kalib was on brief for appellees.

Before BOUDIN, Chief Judge,
LOURIE * and LYNCH, Circuit Judges.

LOURIE, Circuit Judge.

David Reicher and Affiliated Podiatrists appeal from the decision of the United States District Court for the District of Massachusetts dismissing their claims asserting unfair claims settlement practices in violation of Chapter 93A of the Massachusetts General Laws. That decision was based on the district court's finding that the alleged unfair practices had not been conducted "primarily and substantially" within the Commonwealth of Massachusetts, as required by Massachusetts General Laws, Chapter 93A, § 11. We affirm, but on a different ground, concluding that the laws of the State of Maryland apply and bar the appellants' claims.

## I.

David Reicher, a resident of Maryland, practiced podiatric surgery with two partners at Affiliated Podiatrists, a professional association incorporated under Maryland law. Berkshire Life Insurance Company was a Massachusetts insurer whose main offices were located in Pittsfield, Massachusetts. Berkshire merged with The Guardian Life Insurance Company of America in July 2001.

Between 1980 and 1991, Reicher purchased a total of seven disability insurance policies from Berkshire. In addition,

* Of the Federal Circuit, sitting by designation.

Reicher and Affiliated Podiatrists purchased two overhead expense policies and two disability buyout policies from Berkshire between 1984 and 1991.

In June 2000, Reicher became disabled and shortly thereafter both Reicher and Affiliated Podiatrists requested disability benefits from Berkshire pursuant to their policies. Over the next several months, Berkshire sought to establish the nature and extent of Reicher's disability at a pace that the claimants deemed too lethargic. As a result, in December 2001, Reicher and Affiliated Podiatrists filed a complaint against Berkshire and Guardian (collectively "Berkshire") in Maryland state court seeking declaratory relief.

The plaintiffs sued on the legal theory of breach of contract, arguing that Berkshire had engaged in "artful neglect" in handling their claims through a lengthy and drawn-out process. Berkshire asserted in response that it had not yet been able to make a benefits eligibility determination. Eventually, on April 24, 2002, the parties reached an agreement and all accrued benefits plus interest under the disability and overhead expense policies were paid. Following a brief trial on the remaining policies, all benefits payable under the disability buyout policies were also paid with interest. On May 9, 2002, the parties entered a stipulation resolving all issues in the lawsuit, and the court issued an order stating that all claims had been fully and finally adjudicated.

Meanwhile, before the conclusion of the settlement agreements and trial in the Maryland action, Reicher and Affiliated Podiatrists indicated to Berkshire their desire to sue in Massachusetts. Seeking attorney fees and damages beyond the insurance policy limits, they claimed that the insurance company also had violated Massachusetts unfair trade practices law, codified in Chapter 93A, § 9, of the Massachusetts

General Laws. Berkshire responded that those statutory provisions were inapplicable because the insurance policies were governed by Maryland law.

On April 8, 2002, Reicher and Affiliated Podiatrists initiated suit against Berkshire in Massachusetts state court alleging violations of Chapter 93A. Specifically, the plaintiffs claimed that Berkshire's treatment of their insurance claims, the same activity upon which the Maryland action was based, amounted to unfair claims settlement practices actionable under Massachusetts consumer protection laws. Berkshire promptly removed the case to the United States District Court for the District of Massachusetts based on diversity of citizenship, and it filed a motion to dismiss based on *res judicata* or, alternatively, failure to state a claim upon which relief could be granted.

Although the district court held that *res judicata* did not bar the plaintiffs' claims, it did agree with Berkshire that the plaintiffs had failed to state a claim under Chapter 93A. Relying on § 11 of that chapter, the court stated that plaintiffs had not established that Berkshire had engaged in wrongful conduct which occurred "primarily and substantially" within Massachusetts. Reicher and Affiliated Podiatrists moved for reconsideration, arguing that they had brought their case under Chapter 93A § 9, not § 11, and that the "primarily and substantially" language had been purposefully removed from § 9. The district court denied that motion, and the plaintiffs timely appealed.

## II.

On appeal, Reicher and Affiliated Podiatrists renew their argument that the district court relied on the wrong section of Chapter 93A, § 11. Instead, they urge an application of § 9, asserting that the case

should be decided on the merits under Massachusetts law because § 9 does not contain the "primarily and substantially" language found in § 11. Berkshire, however, responds that the laws of Maryland, not Massachusetts, should apply because Maryland has the stronger interest in the present litigation and issues therein. We address the question of choice of law as a threshold matter.

■ Choice of law determinations are legal questions over which courts of appeal have plenary review, *see Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir.1994), and we accordingly review the issue *de novo, see In re San Juan Dupont Plaza Hotel Fire Litig.*, 45 F.3d 569, 576 (1st Cir.1995). It is axiomatic that state substantive law must be applied by a federal court sitting in diversity jurisdiction. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question of which state's law applies is resolved using the choice of law analysis of the forum state—in this case, Massachusetts. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Spurlin v. Merchants Ins. Co.*, 57 F.3d 9, 10 (1st Cir.1995); *Putnam Res. v. Pateman*, 958 F.2d 448, 464 (1st Cir.1992).

### A.

■ The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions, here, Massachusetts and Maryland. *See Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir.1997).

Massachusetts originally enacted Chapter 93A, entitled Regulation of Business Practices for Consumers Protection, in 1967. Since then, courts have interpreted those statutory provisions to encompass new causes of action to protect consumers, including unfair claims settlement practices by insurance companies. *See, e.g., Clegg v. Butler*, 424 Mass. 413, 676 N.E.2d 1134, 1138–39 (1997) (noting that amendments to Chapter 93A entitle even third-party claimants to recover against insurers for violations of unfair claims settlement practices); *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 448 N.E.2d 357, 360 (1983) ("A plaintiff is entitled to relief under Mass. Gen. Laws ch. 93A, § 9, if he is injured by any method, act, or practice of an insurer that is unlawful under Mass. Gen. Laws ch. 93A, § 2, or if his rights are affected by the insurer's violation of Mass. Gen. Laws ch. 176D, § 3(9)."); *Noyes v. Quincy Mut. Fire Ins. Co.*, 7 Mass.App.Ct. 723, 389 N.E.2d 1046, 1047–48 (1979) (stating that Chapter 93A includes insurance practices in its prohibition of unfair or deceptive acts in trade or commerce). Chapter 93A defines certain acts and omissions as unfair claims settlement practices, permitting insured parties and even third parties whose rights are affected to recover under that statute. Mass. Gen. Laws ch. 93A, § 9 (2003); Mass. Gen. Laws ch. 176D, § 3(9) (2003).

■ Maryland law instead provides an entirely different scheme for addressing unfair insurance claims settlement practices, requiring resolution of such disputes through administrative remedies. *See* Md. Code Ann., Ins. § 27–301 (2002); *Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 475–76 (4th Cir.2001). Parties insured under policies governed by Maryland law may file complaints at the Maryland Insurance Administration ("MIA"), an independent agency that regulates Maryland insurance companies, agents, and brokers. Md.Code Ann., Ins. §§ 2–101 to –114 (2002). The MIA investigates consumer complaints regarding policy coverage and allegations of fraud. Based on its findings, the MIA can impose fines on insurance companies or

even revoke licenses to sell insurance within the state. *Id.* As the *Hartz* court noted, Maryland laws allow only administrative action and do not permit a private right of action for unfair claims settlement practices. 269 F.3d at 475–76; *see also Johnson v. Fed. Kemper Ins. Co.*, 74 Md.App. 243, 536 A.2d 1211, 1213 (1988) (holding that "Maryland does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim"). Indeed, "Maryland has decided that the balance between the costs of insurance policies for its citizens and delays in settling insurance claims is best struck with an administrative process" and "the federal courts simply have no license to upend Maryland's decision to resolve this sort of insurance complaint administratively." *Hartz*, 269 F.3d at 475–76.

We therefore conclude that there exists a true conflict between the laws of Massachusetts and Maryland with respect to alleged unfair claims settlement practices by insurance companies.

### B.

■■ The next question is whether the district court properly applied Massachusetts state law to the claims advanced by Reicher and Affiliated Podiatrists. To determine which state's laws apply to a particular case, we employ the choice of law analysis of the forum state. Massachusetts state courts apply "a functional choice of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 668 (1985); *see also Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 632 N.E.2d 832, 834 (1994); *Millipore*, 115 F.3d at 30. In doing so, Massachusetts courts consider a variety of factors in

choosing the applicable state law, including:

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Bushkin Assocs.*, 473 N.E.2d at 669 (quoting *Restatement (Second) Conflict of Laws* § 6 (1971)). Courts also may take into account five parallel considerations:

(A) Predictability of results; (B) Maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of the forum's governmental interests; [and] (E) Application of the better rule of law.

*Id.* (quoting R.A. Leflar, *American Conflicts Law* § 109 (3d ed.1977)). Moreover, the Massachusetts Supreme Judicial Court has stated that it "feel[s] free ... to borrow from any of the various lists to help focus ... attention on the considerations particularly relevant to the case." *Millipore*, 115 F.3d at 30 (quoting *Bushkin Assocs.*, 473 N.E.2d at 670). *See generally Seney v. Prudential Prop. & Cas. Ins. Co.*, No. Civ. A. 94–02864A, 1997 WL 835052, at *3–*5 (Mass.Super.Ct. Dec. 23, 1997) (applying Massachusetts functional approach to choice of law issue in the context of statute of limitations).

Appellants cite various factors which they claim support application of Massachusetts law: Massachusetts is the forum state; Berkshire had its headquarters in Massachusetts and the allegedly unfair claims settlement practices were initiated from its Massachusetts offices; and finally,

Massachusetts may have a legitimate interest in regulating insurance companies conducting business within its borders. These reasons notwithstanding, we find, under the Massachusetts choice of law approach, that the overwhelming majority of factors in the instant case command the application of Maryland laws.

Both Reicher and Affiliated Podiatrists are domiciled in Maryland. The policies were delivered, the premiums paid, and the benefits distributed in Maryland. Although the insurers were incorporated or headquartered in other states, they were licensed by Maryland to sell insurance. Additionally, and perhaps most compelling, Maryland law expressly states that health insurance policies delivered in Maryland, including disability insurance, may not be covered by the laws of any state other than Maryland. Md.Code Ann., Ins. § 12–209 (2002). The statute explicitly represents the public policies of protecting insurance consumers from the application of out-of-state laws and promoting a uniform, predictable system of adjudication of disputes for Maryland citizens. Certainly, the justified expectations of Maryland insured and insurers alike, as well as the ease in determining which state's laws apply to Maryland insurance policies, are supported here by application of Maryland law. Consequently, we find that the State of Maryland has the more significant relationship to the policies and to the parties. Using the foregoing interest-weighing analysis, we conclude that the insurance policies issued to Reicher and Affiliated Podiatrists are properly governed by Maryland law.

### III.

The final inquiry we undertake, having decided that the laws of Maryland govern the insurance policies, is whether those laws permit the appellants' claims as stated under Massachusetts General Laws, Chapter 93A. We can quickly answer that question in the negative, in light of our discussion of Maryland's system for resolving insurance disputes, *supra* section II.A.

▬ Insofar as the appellants' complaint may be characterized as an action in tort, we note that the Maryland Court of Appeals has stated that "[u]nder Maryland law, an insurer which mistakenly denies coverage does not breach a tort duty owed either to the insured or to third-party claimants. Instead, the duty owed to both the insured and to a third-party claimant is entirely contractual." *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 741 A.2d 1099, 1107–08 (1999). Furthermore, the complaint also cannot survive under a theory of breach of contract because of the remedy demanded. Maryland law prohibits the collection of damages beyond the limits of the insurance agreement, which is what Reicher and Affiliated Podiatrists seek by their suit in Massachusetts. *See Hartz*, 269 F.3d at 476. *See generally Crellin Techs.*, 18 F.3d at 11–13 (dismissing appellants' Chapter 93A claim as properly governed by Rhode Island substantive law); 47 A.L.R.3d § 314 (2001). As in *Hartz*, permitting the appellants to recover "damages beyond the policy limits ... would fundamentally alter this insurance contract." 269 F.3d at 476. Because a Maryland state court has already deemed the insurance policies paid in full and because the appellants now seek damages beyond those limits, we find that Maryland insurance law does not permit appellants' cause of action.

It is incumbent that "the federal courts ... respect the administrative structure established by the Maryland legislature for processing claims of this sort." *Hartz*, 269 F.3d at 477. Because Maryland chooses to resolve insurance disputes via an administrative process and does not allow the type

of private action advanced by Reicher and Affiliated Podiatrists under Massachusetts General Laws, Chapter 93A, we *affirm* the district court's dismissal.

*It is so ordered.*